23-1894 Eusenia Soares da Silva Pazine v. Merrick B. Garland Council for the petitioner please introduce herself on the record to begin Good morning and may it please the court, Caitlin Burges on behalf of the petitioners I would like to seek three minutes of rebuttal from the owners Okay, three minutes Petitioners are seeking review of the agency decision upholding the immigration judge's denial of their application for asylum The board's decision was based on two factors upholding the immigration judge's decision on nexus and well-founded fear of future persecution The board erred in upholding the immigration judge's nexus determination that failed to engage in the requisite mixed motive analysis Substantial evidence did not support the immigration judge's nexus determination The immigration judge's sole basis for the nexus finding was rooted in a motivation that appeared to be a custody dispute regarding the children and a property dispute Failing to consider the harm that she suffered was on account of the protected grounds proffered based on her gender What evidence in the record specific to the circumstances of this case would you say best gets at the motivations of Dulce and the attorneys in this case? So her motivations were based on transferred intent of the ex-partner's motivations They were direct surrogates of the ex-partner That is rooted in the petitioner's testimony that her ex-partner wanted her to be submissive and below him And that when asked if her ex-partner would have treated her the way that she did if she were a man, she responded no, he wanted her to remain indefensible But why do we have to believe that the attorney and the other person were motivated by that? It was directly noted in the testimony when asked why the petitioner thought that these people were targeting her It was because they indicated that they were representatives of the ex-partner specifically But representative in a legal sense Yes, but they were carrying out his wishes How is that different from her attorney carrying out her wishes or any attorney because that's why we have an adversarial system Because you have to look at it in the societal context in Brazil where women are seen as inferior to men This court has been involved in some very hot and heavy custody fights through the hate convention And so we know that there are attorneys in Brazil who handle family law matters I don't understand why this is something other than something to be handled in the context of the family court in Brazil Because if you look at how society views women as the inferior and how the legal system does not protect women and how men typically are more successful What's the evidence that the courts don't protect women in custody cases? The country conditions are very clear on what the legal matters with women and not being protected And how there's mass impunity for men and how women are seen as inferior In custody cases, what are you citing specifically? In criminal cases and in custody cases and just in societal context where women are not protected And women are not seen up to the same standard as men whether it's legal or Was there any testimony below in the record or country conditions report specifically saying that the courts Treat women that way? Yes, cite to the specifics of the country report that you're talking about Specifically, I would also cite to the testimony on when she reported it to the police and she went to go report the threats that she was receiving Based on the custody matter and the police said it's a conjugal and dismissed her Well, that means you go to family court, which may not be the best solution in the world, but that's what it means I would argue that based on the record of the country conditions stating that 54% of Brazilian women reporting having gender violence In conjunction with the police not doing anything, it shows that Well, gender violence is different from custody But there were threats of violence to obtain the custody Her life was being threatened to obtain the custody and these threats to her life were being ignored And that should have been a criminal matter as well Is there anything specific in the country conditions report that you can cite to that talks about women are disadvantaged in custody disputes? Not specific to custody, but I would say it's specific to any legal matter When seeking any protections from the government or the state in Brazil, women have There's a culture of impunity, there's a culture of police not responding to matters And the authorities not protecting women in these cases and not carrying out any punishment for The issue is you have to separate, there's a court system So I don't think there's any evidence, at least from the record, there's any evidence that the court system And again, we've had other countries where the country conditions say the court system there doesn't work or it's corrupt But I don't think here we have anything specific You can have corrupt policemen, let's say, but there's no evidence of the court, the judges being corrupt There's a culture of impunity and there's also a culture that the courts see custody disputes as private And that they should be handled in the home Is that in the country conditions report? At AR 268, there's created an atmosphere of impunity for victims of domestic violence Which missed the opportunity to break the escalation of violence that's common in abusive relationships At AR 304, crimes that are related to gender violence have been routinely perceived as private crimes Therefore, they may be pushed to be made a resolution for the complaint in the home You're equating violence with custody But they were trying to use means of violence to obtain a custody of the children They were threatening her life, they were threatening her with danger, they were stalking her, they were harassing her So they have to go hand in hand That still doesn't explain why she did not have some kind of means of relief in a court She should have first, well, she first started with reporting the threats to her life and the threats to her liberty And to the police she was being stalked She went to report this harassment to the police Who should have protected her from that violence that was being used as a means to intimidate her out of fear to lose her children Or she could have filed a petition in family court to get custody of her children And the court could have issued a protective order But those protective orders, regardless if they issued it Those country conditions show that that would not have been upheld The police refused to protect her against a conjugal matter They dismissed her and that was directly said in her testimony And she was also stating that she was having a threat to her life And people were coming, repeatedly stalking her, harassing her Threatening to hurt her, threatening to hurt her children And that should have been taken seriously by the police So why would she have felt that the police or that the family court would have protected her If the police are dismissing these threats that are being made to her life Do you agree with the government that you've abandoned your argument about nexus In two of the asserted PSGs, the Brazilian females and single Brazilian mothers? I do not, because I believe that the testimony in conjunction with the country conditions Other than show that but for her being a single mother there would not be the availability of threats And did you make that argument in your opening brief specifically? I did not, so I'm making it today I would argue that because she's a single mother that gave the access to have these threats Be rooted in fear and be able to have the threats have weight And that goes directly to gender You realize that an argument not raised in your opening brief is waived, right? Understood Okay, you have rebuttal, so let's hear then from the respondent Please introduce yourself on the record to begin May it please the court, my name is Nilam E. Sanula And I represent the U.S. Attorney General in this matter The court should uphold the agency's decision in this case As substantial evidence supports the determination that Petitioner failed to establish the requisite nexus Between her solely preserved particular social group of Brazilian women And the harm that she fears in Brazil I would just want to stress that if we look at petitioner's declaration And her testimony, she herself at no point alleged That Dulce and the attorneys were motivated to harm her on account of her gender The only place where we see her making this argument Is actually in the legal briefing that she filed with the agency And with this court And as is well established, the assertions of counsel are simply not evidence And so what we have here is just speculation That gender is behind Dulce's and the attorney's actions I'm sorry, at her hearing, aside from the briefing She herself never made those assertions, is that what you're saying? She did not She painted a picture of Dulce as someone she had long had a difficult relationship with Dulce had threatened her before She described his family as being very jealous of her And she said that Dulce was rumored to be a criminal So she gave other reasons for why Dulce seemed to have targeted her She also mentioned that Dulce, when she sought to harass her During that 2021 period when she was back in Brazil That it was because she was influenced by her cousin But merely being influenced by Lucas isn't the same As having the gender-related motive that is necessary for her to show here I would like to address that transferred intent argument Which also might be better phrased as an imputed motive I do want to mention that there's no factual support for the idea That Lucas directed the persecutor's actions in Brazil During the relevant 2021 period If we look at the record It seems very much that Dulce and the attorneys were acting on their own And there's no evidence that Lucas was putting them up to certain actions Like the surveillance and the threats that were inflicted on Petitioner during that time But as a legal matter, Petitioner's imputed motive argument Also ignores the fact that it is entirely possible For Dulce and the attorneys to have their own motivation that diverges from Lucas' This is what the immigration judge recognized in his decision When he denied, he sui sponte raised that transferred intent theory And then rejected it in this case Because he said that even if Lucas may have been motivated By his gender-based particular social groups Essentially assuming for the purpose, for the sake of argument That he may have been motivated by Petitioner's gender That evidence did not establish that Dulce and the attorneys Had the same gender-based motivation themselves The immigration judge recognized they just wanted to help Lucas And they were independent actors who had motivations of their own This imputed motive argument also seems to run counter to the way U.S. asylum law generally is supposed to work Motive is critical in asylum law With the Supreme Court telling us in Elias Zacharias That an applicant must provide some evidence of motive Whether direct or circumstantial But Petitioner is essentially arguing with this transferred intent Imputed motive argument that we should be able to assume Without any proof that Dulce and the attorneys had the required motive Simply due to their affiliation with Lucas Such an assumption undermines the basic motive requirement in asylum law And the highly fact-dependent analysis that we apply for motive Isn't there an issue as to motive also Because I'm looking again at the immigration judge's opinion The judge, let me see, it was a he or she Well, the judge, let me see A he, your honor It's a he He considered those arguments You know, the government's arguments He weighed the evidence and he's making some factual findings It's not like he's saying that's never going to be considered So our standard would be then clearly erroneous As to that determination, am I correct? For factual findings I mean, the board, you mean, applies the clear error standard Yeah, I mean, the clear error But the BIA reviewed that on the clear error We review on the clear error also as factual findings That's correct But the judge did that He weighed the evidence He considered credibility And again, I don't think You know, basically it's a weight of the evidence And that's his prerogative, not ours Am I correct? That's correct Because substantial evidence is the standard That applies here to the nexus analysis Because of that fact-determinative motive analysis that's required To prevail here, petitioner would have to show That the record evidence compels the conclusion That Dulce and the attorneys were motivated On account of her gender-based social group And that's a very high standard that she has to meet She can't just point out some evidence that supports her She has to show that the evidence is such That no reasonable fact-finder could fail to find against her The other point I want to make is that here Lucas' motive is essentially irrelevant Because she did not base her asylum claim on Lucas' harm In the United States Nor could she Because the asylum and withholding of removal laws Are intended to protect foreign nationals Who fear persecution in their country of nationality Lucas is not the persecutor for purposes Of her asylum and withholding claims And that's why his motivation was irrelevant And the immigration judge didn't make any factual findings As to what his analysis would be Petitioner is essentially asking this court To speculate what Lucas' motive is And then asking the court to ascribe that motivation To Dulce and the attorneys to establish an asylum claim But we can't speculate in that way Without the immigration judge providing findings for us to review Also, even assuming that Lucas may have been motivated To harm petitioner on account of a protected ground It simply doesn't make sense for asylum law To reach a case like this one Where the only individual with the motive to harm On account of the protected ground Is located here in the U.S. There are certain forms of immigration relief For non-citizens who have been harmed in the U.S. I'm thinking of U visas for victims of criminal activity T visas for victims of trafficking But asylum works differently And the petitioner cannot obtain asylum And or withholding of removal here Where she cannot show that any of the individuals Who inflicted the harm in her home country Were motivated by a protected ground Let me ask you, if we were to affirm Does she still have relief under those other visas? She can, in theory, request those at any time? I don't know her eligibility I'm not an expert on those visas, to be honest But they are intended to protect people Who are victims of crime in the United States That's my understanding Let me also ask you another question Similar to what Judge Thompson asked Opposing counsel Counsel's bringing the issue of domestic violence The courts in Brazil don't do anything to really remedy this They look the other way People are impugned But this is really a custody thing Counsel tries to tie that in What would you say about that? For purposes of the persecutors We have to remember that Dulce and the attorneys Are the relevant individuals Whose motives we are looking at And their motivation is not domestic violence Their motivation is to help Lucas In his fight against Petitioner For custody and for property And so that country condition's evidence Is not directly on point And it is simply also just too generalized To establish the motivations Of why Dulce and the attorneys Were specifically targeting the Petitioner But for purposes For Dulce and the attorneys' purposes This was very much a personal conflict It was not rooted in domestic violence For them this was the Petitioner and Lucas Fighting each other And they had chosen their sides Dulce and the attorneys had chosen their sides Unless there are further questions One last question I apologize, I'm the one who asked Back to back to back But going to country conditions There was a report considered at some point The judge said basically It doesn't really apply to this scenario Am I correct? Did he consider some country conditions? He did, I mean so he writes In the beginning of his opinion He says he has a generic language About the fact that everything in the record Has been considered And so usually that sentence Is supposed to allow the agency To be entitled to a presumption That they have reviewed everything in the record The board specifically mentions The country conditions evidence And talks about the fact that it's simply Too generalized to help Petitioner In establishing that Lucas That Dulce and the attorneys Had a specific motive to target her And I assume in the government's position For that country conditions to be favorable to her It would have to be more specific Like the court system is either corrupt As we've seen in other cases In other countries Or the courts simply Statistically never favor women But that's not the case here Yes, I think we can think of evidence That would be more helpful And we just don't have it here in this record Okay, thank you Thank you Okay, Ms. Burgess You have three minutes for rebuttal Please introduce yourself back on the record to begin Caitlin Burgess on behalf of the petitioners Thank you As to the efficacies of the courts There is country conditions evidence That says that there's widespread lack of trust In the government and view the legal sector as ineffective That was at AR 258 It showed that there was a generalized lack of trust For the government And that women had a major barrier To obtain any relief within the legal sector I would now point that The respondent said that Lucas' motive Is not relevant in this case Lucas' motive was relevant As he was directly sending his surrogates To fight the custody dispute What was the evidence of that? Did she testify That they were saying That Lucas sent them Because She directly testified that Lucas That they were representative sent by Lucas Is what they told her They said that they were going to use some means For her to lose custody at AR 140 They said that if they did not sign the paperwork That Lucas was seeking custody And the property from at AR 142 That they would do something against her life And that's at the same AR 142 And that The petitioner shows that They were trying to use means Out of fear and control To threaten her to lose custody of her children Where she felt the legal sector was not going to protect her Against these means That if she did bend and go to court That she was not going to have any form of success Against a man that was seeking the children's custody Because she was a submissive female In the societal context in Brazil These viewpoints on the status of Brazilian women Within the society underpin The personal dispute between the petitioner and her ex-partner And indicate that the membership That she proffered in her social groups As to her gender were inextricably linked To the mistreatment that she suffered Which was coordinated entirely by her ex-partner Through the means in advance by his surrogates This enforces a belief that she should submit to him Because as a male He was entitled to dominate and control her life And this was echoed in her testimony When asked what she believed the motivations Behind her ex-partner were That was directly transferred to the surrogates Who he was directly sending To carry out his wishes Because he was not in the country So he sent his family members And he sent his legal representatives That were at his hire In that the custody dispute and her gender Could not be disentangled They were using the one thing That meant something to her And her livelihood and her children To be able to threaten and control her And make her submissive to him And what his wants were And that It's just odd that she didn't seek Legal advice to figure out What her rights may have been In this regard I think that goes to the country conditions Which state that the legal sector Is ineffective for women Whether it be the criminal sector But the entire legal sector This is viewed as ineffective for women Right, but that's a widespread view There's some testimony from her For example, I try to Hire three, four, five attorneys They all said no, you're a woman There's no evidence of her actually Going to an attorney, she's just saying It's going to be ineffective, am I correct? Correct, because I believe That's her belief, but it's not like She's got firsthand knowledge of that Right, but her belief was rooted in the societal context Of what it was like being a Brazilian woman Where she spent her entire life Around the women being submissive And women having to be inferior to men Okay, thank you Any further questions?